## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISON

JYQWAVOUS WHITAKER,          )
                                 )
          Plaintiff,       )
                                 )
v.                              )
                               )   CIVIL ACTION NO.
SHERIFF VICTOR HILL, in his individual )
And official capacities, as Sheriff of Clayton )
County Georgia and RAYMON SHEROD   )   1:21-cv-03781-AT-JSA
WINN, in his individual capacity, as a Clayton )
County Deputy Sherriff                 )
                               )
          Defendants.    )
_____)

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**COMES NOW** Plaintiff JYQWAVIOUS WHITAKER, (hereinafter referred to as Plaintiff), by and through his counsel of record and files this his RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT.  Plaintiff states as follows:

### I.     PROCEDURAL BACKGROUND

The Plaintiff filed this action on September 13, 2021, alleging violations of his constitutional and federal civil rights as effectuated through 42 USC § 1983, as well as assertions that the Defendants committed state law violations. The initial complaint attached six (6) exhibits including photographic evidence of the results of a physical beating Plaintiff suffered at the hands of Defendant Raymon Sherod

Winn (hereinafter referred to as "Defendant Winn"), while being housed at the Clayton County jail as a pre-trial detainee. Defendant Winn answered the Complaint on November 11, 2021 [Doc. 6] and subsequently filed an Amended Answer on December 2, 2021 [Doc. 10]. Defendant Winn's Amended Answer raises the affirmative defense that the Plaintiff has not exhausted his available administrative remedies under the Prisoner Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a).[1]  On the same date, Defendant Winn filed a Motion to Dismiss the Complaint [Doc. 11].

Defendant Winn's Motion to Dismiss the Complaint is predicated on the factual allegation that, prior to filing his Complaint in this case, the Plaintiff did not exhaust his available administrative remedies at the facility in which he is detained, i.e., the Clayton County jail. He alleges that this court lacks subject matter jurisdiction to hear the Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b) based upon the PLRA.  On December 23, 2021, Plaintiff amended his Complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B) [Doc. 13] to address the assertion raised in Defendant Winn's Amended Answer and his Motion to Dismiss the Complaint that he had not exhausted all available administrative remedies prior to filing the Complaint in this action. With the filing of his Amended Complaint, Plaintiff has added a seventh and eighth exhibit to his

---

[1]        Defendant Winn's Fourth Affirmative Defense.

pleadings, to include his declaration and the declaration of his mother, Carlitha

Whitaker.  These exhibits specifically address Defendant Winn's Amended

Answer and the allegation that the Plaintiff has not exhausted all available

administrative remedies, as required by the PLRA.

## II.   FACTUAL BACKGROUND

On September 12, 2019, Plaintiff was a pre-trial detainee in the Clayton

County jail. (See Complaint at ¶ 9).  On this date, at approximately 10:30AM,

Plaintiff was brutally and savagely assaulted by Defendant Winn without reason or

provocation. (See Complaint at ¶ 10).[2]

Defendant Winn's actions resulted in Plaintiff's loss of consciousness,

serious bruises, contusions and other injuries, including Plaintiff's braces being

imbedded in his lips due to Defendant Winn's blows to his face and head. (See

Complaint at ¶ 20 and [Docs 1-1, 1-2 and 1-3][3]. After the assault, Plaintiff was

administratively sentenced to a minimum of four hours in the restraint chair,

administrative segregation, and three days of nutri-loaf. (See Complaint at ¶ 21,

and [Doc. 1-1])

As a result of the assault by Defendant Winn, Plaintiff's skull was X-rayed

for possible skull fracture. [Doc. 1-2]. Plaintiff was strapped to the restraint chair

---

[2]      See Declaration of Jyqwavous Whitaker at ¶ 7.

[3]      See Declaration of Jyqwavous Whitaker at ¶ 11).

and then spent one to two days in the infirmary.[4] Plaintiff was housed in the medical ward for approximately one to two days for treatment and observation and monitoring for swelling of the brain.[5] The Plaintiff was able to communicate to his mother what had happened to him.[6] She filed an Internal Affairs Complaint about the incident with the Clayton County Jail.[7]

While in the hole, Defendant Winn visited the Plaintiff on a daily basis to deliver his serving tray, ordering him to clean his cell and threatening to tell other detainees he is a snitch and calling him a sissy for calling his mom.[8]

An officer removed Plaintiff from the hole and took him to see Lieutenant Thomas where the Plaintiff penned a statement as to what happened to him.[9] Plaintiff met with Lieutenant Thomas of the Scorpion Team for five to ten minutes. Lieutenant Thomas asked Plaintiff what happened on September 12, 2019, and the Plaintiff told him the truth of what had happened to him.[10]  Plaintiff spent a total of thirty-nine (39) days in the hole.[11]

---

[4]       See Declaration of Jyqwavous Whitaker at ¶ 14.

[5]       See Declaration of Jyqwavous Whitaker at ¶ 18.

[6]       See Declaration of Jyqwavous Whitaker at ¶ 18.

[7]       See Declaration of Jyqwavous Whitaker at ¶ 17 and at Exhibit "B".

[8]       See Declaration of Jyqwavous Whitaker at ¶ 19.

[9]       See Declaration of Jyqwavous Whitaker at ¶ 22.

[10]      See Declaration of Jyqwavous Whitaker at ¶¶ 22 - 26.

[11]      See Declaration of Jyqwavous Whitaker at ¶ 26.

During the thirty-nine (39) days Plaintiff spent in the hole, he did not have access to the kiosk where grievances are purportedly submitted. When Plaintiff was released from the hole after thirty-nine (39) days, he participated in orientation again.[12]  The orientation process consisted of directions about how to follow the rules, such as obeying officers and when beds should be made.[13] Orientation did not consist of any directions regarding the grievance procedure, and the statements of Sgt. Kali Huitt to the contrary are not true.[14]

### III.   ARGUMENT AND CITATION TO AUTHORITY

#### A. The Motion to Dismiss Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must [ ] contain sufficient factual

---

[12]     See Declaration of Jyqwavous Whitaker at ¶ 27.

[13]     See Declaration of Jyqwavous Whitaker at ¶ 27.

[14]     See Declaration of Jyqwavous Whitaker at ¶ 28 - 29.

5

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting

*Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff

pleads sufficient factual content for the Court to draw the reasonable inference that

the defendant is liable for the conduct alleged. *Am. Dental Ass'n*, 605 F.3d at 1289

(citing *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, "all well-

pleaded facts are accepted as true, and the reasonable inferences therefrom are

construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v.*

*FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC*

*Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). In ruling on a motion to

dismiss the Court is required to consider the parties' pleadings and any exhibits

attached to the pleadings and must accept the allegations in the Plaintiff's

pleadings as true and draw all reasonable inferences in the Plaintiff's favor.

*Whatley v. Smith*, 898 F.3d 1072, 1082 (11th Cir. 2018); *Geter v. Baldwin State*

*Prison*, 974 F.3d 1348 (11th Cir. 2020).

      B.  <u>The Eleventh Circuit Has Established a 2-Step Process for</u>
<u>Determining Whether Administrative Remedies at a Detention</u>
<u>Facility Were Available to a Plaintiff Regarding an Incident that is</u>
<u>Complained Of</u>

Defendant Winn's Motion to Dismiss proceeds on the fact-based allegations

that: (1) the Clayton County Jail provided an available means of filing an

administrative grievance to the Plaintiff, on September 12, 2019 and for the five

6

day period thereafter, in which he could have filed a timely grievance; and (2) the fact that the Plaintiff failed to avail himself of the opportunity to file an administrative grievance in accordance with the procedures provided.  In support of these allegations Defendant Winn has submitted the declaration of Clayton County Sgt. Kali Huitt.

Sgt. Huitt declares that: (a) the Clayton County Jail ("the CCJ") maintains a standard grievance procedure ("the Grievance SOP")[15]; (b) detainees and inmates at the CCJ are informed and educated about the Grievance SOP during orientation and intake and that CCJ staff are always available to answer questions[16]; and (c) detainees and inmates are informed that they must use the Kiosk system to electronically submit grievances after attempting to resolve the grievance informally through discussion with an officer.[17] Finally, Sgt. Huitt states that Plaintiff has filed only one grievance, dated March 9, 2019, during the period 1/1/2019 – 12/31/2020.[18]

Sgt. Huitt's declaration is diametrically contradicted by the declaration of the Plaintiff.  The Plaintiff states that he has never been informed of the grievance

---

[15]     Kali Huitt Declaration at ¶ 3.

[16]     Kali Huitt Declaration at ¶ 4.

[17]     Kali Huitt Declaration at ¶¶ 5 and 6.

[18]     Kali Huitt Declaration at ¶ 7.

procedure at the jail, by jail staff through orientation and intake.[19]  He states that immediately after he was assaulted he was placed in the "hole" for 39 days and was without access to the kiosk system.[20]  He also states that during the month of September 2019 there was no grievance officer in his pod.[21] The declaration of Jyqwavous Whitaker directly contradicts the declarations of Sgt. Kali Huitt at paragraphs 4 – 6 of Sgt. Huitt's declaration.

It should also be noted that Sgt. Huitt's declaration, at paragraph 3 makes the broad general declaration that "[d]etainees and inmates at the CCJ are informed and educated about the Grievance SOP during orientation and intake".  He delineates no basis as to how he could know that every detainee or inmate in the CCJ receives information and education on the Grievance SOP. He provides no basis or foundation from which to determine how he could make such a statement from his own personal knowledge.

"An affidavit or declaration used to support or to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated". Fed. R. Civ. P. 56(c)(4); *Levinson v. Landsafe Appraisal Servs., Inc.* (11th Cir.

---

[19]     Jyqwavous Whitaker Declaration at ¶¶ 28 and 29.

[20]     Jyqwavous Whitaker Declaration at ¶ 30.

[21]     Jyqwavous Whitaker Declaration at ¶¶ 30 and 31.

2014).  Because Kali Huitt's declaration fails to lay a foundation as to how he could know of his own personal knowledge that every CCJ detainee or inmate is instructed and educated on the CCJ Grievance SOP his affidavit is insufficient as a matter of law to create a material fact that the CCJ Grievance SOP is available to all detainees and inmates.

The written Grievance SOP which is attached to Kali Huitt's declaration as Exhibit 1 states that it was first created in 1986 and last updated September 6, 2011, eight years before the incident at issue.  It provides for a procedure that is not the procedure stated in Kali Huitt's declaration.  The written Grievance SOP speaks of the inmate placing a Grievance Form in a Grievance Box mounted in his/her Housing Unit with the Grievance Officer collecting all Grievance Forms during each shift. [Doc. 11-2, p. 4]. Whereas, Kali Huitt describes the current Grievance SOP as requiring a detainee to submit his grievance to an electronic kiosk. (Kali Huitt declaration at ¶¶ 5 and 6).

The procedure stated in the official written Grievance SOP contradicts the grievance procedure described in Kali Huitt's declaration. There is a disconnect between the official written Grievance SOP and the unwritten, presumably unofficial procedures, he describes in his declaration.  It is unclear from Kali Huitt's declaration as to which grievance procedure he claims detainees receive orientation on, the written official Grievance SOP, last updated 10 years ago, or the

unofficial and unwritten kiosk procedure he describes in his declaration as being the current grievance procedure.

More particularly Kali Huitt's declaration lacks any specific particularity as to the Plaintiff. It does not state when or by whom the Plaintiff was instructed or educated on the CCJ Grievance SOP; whether he was provided a written copy of the CCJ Grievance SOP, and if so, when, and who provided it; nor does he state when the kiosk system was initiated and whether a kiosk was located in the housing unit occupied by the Plaintiff on September 12, 2019, which is not the same housing unit he was housed in on March 9, 2019; nor does he state whether the Plaintiff was instructed and educated on the use of the kiosk system. Kali Huitt's generalized and conclusory declaration that detainees are instructed and educated on use of the kiosk system fails to set forth facts sufficient to conclude that the grievance system was available to the Plaintiff in his particular housing unit on September 12, 2019.[22]

Nor does his declaration account for the fact that the Plaintiff was placed in administrative segregation immediately after the incident for 39 days. (See Amended Complaint Exhibit "7", Plaintiff's declaration at ¶ 26). No mention is made in his declaration as to how a detainee placed in administration segregation is

---

[22]      Since there is a divergence between the written Grievance SOP and the method described in Sgt. Huitt's declaration there is a factual gap not described in the record as to when the electronic kiosk system was implemented and whether it was available and operable in the Plaintiff's particular housing unit on the date of the incident complained.

able to physically access the kiosk system.  If, as the Plaintiff states in his declaration, he had no access to the kiosk system while in administrative segregation, then there was no physical availability on the part of the Plaintiff to file an administrative grievance. (See Amended Complaint Exhibit "7", Plaintiff's declaration at ¶ 30).

The failure to exhaust administrative remedies is an affirmative defense. The burden therefore is on the defendant to show that the plaintiff has not exhausted properly his administrative remedies. See *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Whatley v. Smith*, 898 F.3d 1072 (11th Cir. 2018). Because the factual allegations of Sgt. Huitt's declaration as to the availability of an administrative remedy are directly contradicted by the declaration of the Plaintiff, Defendant Winn has failed to carry his burden that the Plaintiff has not properly exhausted his available administrative remedies. *Id*.; see also *Turner v. Burnside* , 541 F.3d 1077, 1084 (11th Cir. 2008).

The Eleventh Circuit has decided that district courts must follow the two-step process outlined in *Turner* when considering whether dismissal for failure to exhaust is appropriate under Fed. R. Civ. P. 12(b)(6). Under *Turner*, the district court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Turner*, 541 F.3d at 1082; *Whatley v. Smith*, *supra*.

11

At step two of the *Turner* analysis, the district court must "make specific findings in order to resolve the disputed factual issues related to exhaustion," with the burden of proof remaining on the defendant to show "that the plaintiff has failed to exhaust his available administrative remedies." *Id.* After making specific findings of fact, the district court "then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

Even if the Court were to accept the facts as stated in Sgt. Kali Huitt's declaration that the CCJ maintained a standard grievance procedure and that the Plaintiff was instructed on the use of the procedure, Defendant Winn nevertheless fails to carry his burden of proof on the issue as to whether the Plaintiff failed to exhaust his administrative remedies. The inescapable conclusion that must be reached from the conflicting declarations submitted on behalf of the parties, when taking the Plaintiff's version as true, is that the Plaintiff had no available administrative remedies within the five-day period after the beating he suffered on September 12, 2019 because: (1) he was in administrative segregation for the 39-day period afterwards, without physical access to the electronic kiosk portal from which to make a grievance; and (2) there was no grievance officer in his pod to answer any questions or to complain about the lack of a method to make a grievance.

These facts are uncontradicted in the record of this case and, therefore, in the context of a motion to dismiss, even if contradicted, which they are not, must be accepted as true together with any reasonable inferences therefrom. *Geter v. Baldwin State Prison, supra.* Under the two-step *Turner* analysis, the Defendant's motion to dismiss must be denied.

C. The Plaintiff Had No Available Administrative Remedies Under the Analytical Framework Set Forth in the United States Supreme Court Decision in *Ross v. Blake*

The Supreme Court has provided an overarching framework for evaluating the "availability" of administrative remedies in *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 195 L.Ed.2d 117 (2016). The Court in *Ross* enumerated three circumstances in which administrative remedies were unavailable under the PLRA: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes... incapable of use... [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

Although all three *Ross* factors are at play in light of the Plaintiff's declaration, we will only highlight the third factor for purposes of the Defendant's motion to dismiss.  The Plaintiff avers and declares that use of the grievance

procedure to complain about mistreatment at the hands of jail administrators and staff will make you a marked man. He alleges that he has suffered assaults at the hands of jail personnel on no less than three occasions.[23] He alleges that each time he was assaulted he was given disciplinary punishment. The last such occasion, occurring on September 12, 2019, resulted in the filing of the instant Complaint.

He further alleges that the grievance system at the jail is used to label detainees as troublemakers if they use the system to report serious infractions by jail staff.[24] He states that Defendant Winn threatened to tell other "higher status detainees" that he was a snitch to set him up for an assault by other detainees.[25] He also states that after being called to an interview with Lieutenant Thomas, wherein he refused to recant what he had told his mother about how he was assaulted by Defendant Winn, he was returned to administrative segregation as punishment and intimidation.[26] Taken together these statements and the reasonable inferences that can be drawn from them indicate an attempt on the part of Clayton County jail personnel to intimidate and threaten the Plaintiff from making an outcry grievance about how he was treated by Defendant Winn on September 12, 2019.

---

[23]     Jyqwavous Whitaker Declaration at ¶¶ 3 - 8.

[24]     Jyqwavous Whitaker Declaration at ¶ 34.

[25]     Jyqwavous Whitaker Declaration at ¶¶ 19 and 20.

[26]     Jyqwavous Whitaker Declaration at ¶ 26.

Clearly then, given the statements of intimidation and threats made directly to him by Defendant Winn and the fact that he was punished for not recanting the statements he made to his mother, the administrative grievance procedures were not made available to the Plaintiff due to the "machination[s], misrepresentation[s], or intimidation[s]" of Clayton County jail personnel. Resultingly, the third element of the *Ross* factors is demonstrated by, and evidenced by, the record in this case. See also, *Geter v. Baldwin State Prison, supra.*

The Eleventh Circuit has joined several other federal appellate circuits which hold that retaliation, or the threat of retaliation, can make an administrative remedy unavailable. *Turner v. Burnside*, 541 F.3d 1077, at 1084 (11th Cir. 2008). There the Court stated:

> We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust. Turner v. Burnside, at 1085.

A prison official threatening to tell other inmates in a gang infested jail that a particular detainee is a snitch is that type of threat that would deter a reasonable detainee of ordinary firmness and fortitude from lodging a grievance. The Plaintiff declared in his declaration that "[b]ecause of the threats made against me by

15

Raymon Winn, I did not want to aggravate the situation more by filing a grievance which I could not file anyway because of the fact that there was no grievance officer or kiosk in my pod."[27]

The record evidence in this case is that there were direct threats made to the Plaintiff, by Defendant Winn, subsequent to the beating he endured at the hands of Defendant Winn, the perpetrator of the beating.[28]  There is further evidence in the record that the threats by Defendant Winn discouraged the Plaintiff from filing a grievance concerning the beating he suffered at the hands of Defendant Winn.[29]  Additionally, there is evidence in the record that use of the grievance system to report serious misbehavior on the part of jail personnel will set a jail detainee up as a target to be physically retaliated against by other jail detainees.[30]

## IV.   CONCLUSION

Defendant Winn's motion to dismiss should be denied for the reason that the Plaintiff never had the opportunity or the availability to file an administrative grievance because the system for doing so is electronic and dependent upon access to an electronic portal that the Plaintiff never had access to during the period of time that he could timely do so.  Further, the Plaintiff was dissuaded from filing a

---

[27]     Jyqwavous Whitaker Declaration at ¶ 32.

[28]     Jyqwavous Whitaker Declaration at ¶ 19.

[29]     Jyqwavous Whitaker Declaration at ¶ 32.

[30]     Jyqwavous Whitaker Declaration at ¶ 35.

grievance due to the serious threats of retaliation made directly to him by

Defendant Winn. For the foregoing reasons, Defendant Winn's Motion to Dismiss

Plaintiff's Complaint should be DENIED.

This 23rd day of December 2021.

Respectfully submitted,
**WAYNE B. KENDALL, P.C.**

/s/ Wayne B. Kendall
Wayne B. Kendall
GA Bar No. 414076
/s/ Kimberly A. Ellison
Kimberly A. Ellison, Esq.
GA Bar No. 141716

*Attorneys for Plaintiff*

155 Bradford Square; Suite B
Fayetteville, Georgia 30215
Telephone: (770) 778-8810
Facsimile: (770) 716-2439

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I served the foregoing Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Complaint upon the named Defendants by regular mail, postage prepaid to be delivered to the following mailing addresses:

A. Ali Sabzevari
Jack R. Hancock
Freeman Mathis & Gary, LLP
661 Forest Parkway; Suite E
Forest Park, Georgia 30297

Victor Hill
335 Bear Creek Trail
Hampton, Georgia 30228

Respectfully submitted, this 23rd day of December 2021.

**WAYNE B. KENDALL, P.C.**

*/s/ Kimberly A. Ellison*
KIMBERLY A. ELLISON
Georgia Bar No. 141716
kimberly@waynebkendallpc.com
WAYNE B. KENDALL
Georgia Bar No. 414076
wbkendall2@yahoo.com

155 Bradford Square; Suite B
Fayetteville, Georgia 30215
Telephone: (770) 778-8810
Facsimile: (770) 716-2439

*Attorneys for Plaintiff*